UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM D. THOMAS,

     Petitioner,

v.

ERICK BALCARCEL, *Warden*,

     Respondent.

Case No. 17-cv-12843-LJM-EAS
Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

## OPINION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS [1]

In March 2012, a woman was raped by a man who was, for most of the encounter, masked. At one point during their investigation into the crime, the police called the victim to the station. There, a police captain informed the victim that an arrest warrant was out for someone whose DNA matched DNA found on clothing worn by her assailant and recovered from the crime scene. Then, when the captain had to leave to take a phone call, the victim saw a photo on the captain's computer screen. The photo was of William Deshiree Thomas. Later, at Thomas' preliminary examination and at trial, the victim identified Thomas as her attacker. At trial, Thomas put on an alibi defense. Consistent with Michigan law, Thomas disclosed to the prosecution his list of alibi witnesses. Although the same Michigan statute required the prosecution to reciprocate, i.e., tell Thomas its rebuttal alibi witnesses, the prosecution did not provide Thomas with any such list. But, at trial, the prosecution was allowed to call in its case-and-chief a witness who testified contrary to Thomas' alibi.

Thomas believes that these two issues—the hint given to the victim at the police station and the surprise rebuttal alibi witness—warrant a writ of habeas corpus from this Court. For the reasons that follow, the Court will not grant the writ.

## I.

### A.

On March 17, 2012 (St. Patrick's Day), a woman "heard a noise in her home and discovered a man in her kitchen." *People v. Thomas*, No. 321822, 2015 WL 6955182, at *1 (Mich. Ct. App. Nov. 10, 2015). The intruder "wore a white mask over his mouth and a white 'do-rag' on his head and was armed with a knife." *Id.* After a struggle, the intruder forced the woman into the shower and compelled her to wash. *Id.* He then ordered her to remove her clothing and raped her. *Id.* The intruder then "sprayed her with bleach and ordered her into the shower." *Id.* "The victim waited a few moments and peeked around the shower curtain. She testified that she saw the man—without his mask on—frantically searching through the contents of a wastebasket he had overturned. He looked up and ordered her back into the shower. She waited several more minutes and then crept from the shower and called the police department." *Id.* Later, police recovered the intruder's do-rag. *Id.*

The State of Michigan charged Thomas with the crimes. The evidence at Thomas' criminal trial included the victim's identification of Thomas, expert testimony indicating that Thomas' cellphone (or one he was using) was in the general vicinity of the victim's house around the time of the attack, and evidence that Thomas' DNA was found on the do-rag recovered from the victim's house. Thomas' defense was that whoever the intruder was, it was not him. While his DNA was on the do-rag, it also contained the DNA of two others. And Thomas presented an alibi. In particular, Thomas' girlfriend testified that she and Thomas were dropping off her infant

daughter at a babysitter's house at the time of the attack. Having heard the evidence, the jury convicted Thomas of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(e), and first-degree home invasion, Mich. Comp. Laws § 750.110a(2).

## B.

Thomas appealed without success. *See People v. Thomas*, No. 321822, 2015 WL 6955182 (Mich. Ct. App. Nov. 10, 2015). And the Michigan Supreme Court was not "persuaded" to hear Thomas' case. *See People v. Thomas*, 878 N.W.2d 875 (Mich. 2016).

Thomas now seeks a writ of habeas corpus from this Court.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA)—28 U.S.C. § 2254 in particular—"confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Thus, if a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## III.

Thomas has two grounds for habeas corpus relief. He asserts that the victim was able to identify him as her attacker because of the suggestion given by police when she came to the station

and because she saw him on the news. He also asserts that the introduction of testimony that rebutted his alibi was fundamentally unfair.

**A.**

Thomas' first claim is that the victim was only able to identify him because she was given a strong hint (or practically told) that he was the attacker.

To fully understand Thomas' assertion, some additional background is necessary. About two weeks after the attack, the police called the victim to come down to the station. Once there, Daryl Green, a police captain, told the victim that they had a DNA match and that there was a warrant out to arrest the match. (ECF No. 12, PageID.567.) The victim explained to the jury:

> While I was in Captain Green's office, he took a phone call on his cell. He said, "Excuse me," went out in the hallway, took a call. I was sitting there looking around and waiting for him. And I saw a picture on his computer screen, like the Judge's, kind of off, you know, I was—not even that much, really, kind of off at an angle, and it caught my attention because I recognized him, and I looked at it to see. So when Captain Green came back in, I asked him—I didn't ask him. Actually, I told him. I said, "That's him, isn't it?" And he was very non-committal. He didn't say yes, no, or anything.

(ECF No. 12, PageID.568.)

With that background, the Court can flesh out Thomas' claim. In Thomas' view, the victim was first told that the police were going to arrest someone whose DNA matched DNA found at the crime scene. (*See* ECF No. 1, PageID.23.) Then the victim was left alone with Captain Green's computer screen "in plain view." (ECF No. 1, PageID.24.) According to Thomas, contemporaneously learning that the police were going to arrest the DNA match and seeing his picture on the captain's computer screen led the victim to conclude that he was her attacker. (*Id.*) And absent that direction, Thomas argues, the victim may have never been able to identify him as the attacker. (ECF No. 1, PageID.25.) Indeed, Thomas points out, she was not able to describe her attacker in enough detail for a composite sketch. (ECF No. 1, PageID.25.) So, says Thomas, his

due process rights were violated because police suggested to the victim he was the attacker. (ECF No. 1, PageID.26.)

The Michigan Court of Appeals rejected this claim. Here is what the state appellate court said:

> Thomas argues that the threshold inquiry in [*Perry v. New Hampshire*, 565 U.S. 228, 242 (2012)]—whether the identification was "procured under unnecessarily suggestive circumstances arranged by law enforcement"—was satisfied in this case. He argues that law enforcement arranged the identification in the police captain's office by calling the victim to the office, telling her that the officers had an arrest warrant for her assailant on the basis of a DNA match, and then leaving her alone in the office with a photograph of Thomas on a computer screen. Although a police officer contacted the victim and requested her presence at the police station, she was not contacted to make an identification; Thomas had already been identified from the DNA match and there was no evidence that officers wanted the victim to examine the photo or confirm Thomas' identity as her attacker. Instead, it appears that the victim saw the photo by mere happenstance.
>
> The evidence shows that the captain was conversing with the victim when he was interrupted by a phone call. He stepped out of the office to take the call and, while he was absent, the victim noticed Thomas' photo on the computer screen even though the screen was angled away from her. Nothing on this record indicates that law enforcement used unnecessarily suggestive procedures to procure an identification. Accordingly, Thomas has not established the threshold inquiry.

*People v. Thomas*, No. 321822, 2015 WL 6955182, at *2 (Mich. Ct. App. Nov. 10, 2015).

That was an "on the merits" determination of Thomas' unduly-suggestive-identification claim. So § 2254(d) applies.

And Thomas has not shown that the Michigan Court of Appeals unreasonably applied *Perry* or made unreasonable, material factual determinations. *See* 28 U.S.C. § 2254(d). In *Perry* the Supreme Court stated, "The due process check for reliability [of an identification] . . . comes into play only after the defendant establishes improper police conduct." *Perry*, 565 U.S. at 241; *see also id.* ("[W]e hold that the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under

5

unnecessarily suggestive circumstances arranged by law enforcement."). Thomas says that there was improper police conduct in his case because the police called the victim to the station, told her about the DNA match, and then left the computer screen in plain view. (ECF No. 13, PageID.1139.) But the testimony that Thomas cites does not clearly establish improper police conduct:

> Q. Okay. And so . . . you suggested that the Judge's computer screen is—
>
> [THE VICTIM:] It's not quite like that because I was sitting on the other side of the [captain's] desk—of his desk. . . . It was off, you know, several feet and kind of angled, but, you know I'm sitting there while he's out in the hall. I'm just looking around, and it caught my eye . . . which I could see enough of it that it caught my eye.
>
> Q. Do you remember if this photograph said "Wanted" on it or not?
>
> A. I no, I didn't there was it was some writing around it, but I don't know what it was. It wasn't all that big. You know, it just caught my eye, you know; you're looking around.

(ECF No. 12, PageID.573.) This testimony does not show that the Michigan Court of Appeals' unreasonably thought "the screen was angled away from" the victim. *Thomas*, 2015 WL 6955182, at *2. And having reviewed the other evidence bearing on this issue (ECF No. 12, PageID.568, 925, 1029), the Court cannot say it was unreasonable for the Michigan Court of Appeals to have found no improper police conduct. It follows that the Michigan Court of Appeals reasonably concluded that Thomas had not cleared the first requirement of *Perry*.

Accordingly, Thomas has not cleared § 2554(d) and so his claim that the victim only identified him due to the events at the station does not warrant habeas corpus relief.[1]

---

[1] To the extent that Thomas claims that the victim's in-court identifications were due to seeing his photograph on the television news, he would also not be entitled to relief. As just explained, "only police-created impermissibly suggestive circumstances implicate due process concerns and thus require a reliability assessment by the trial court." *Schroeder v. Premo*, 714 F. App'x. 666, 669 (9th Cir. 2017).

**B.**

The Warden says that Thomas' second claim for habeas corpus relief is time-barred. In his petition, Thomas clearly presented his second claim but only extensively briefed his first. (*See* ECF No. 1, PageID.1–2 ("a. Identification Issue. . . . b. Alibi Rule Enforcement Issue.").) Prior to the Warden's response, Thomas moved to amend his petition to fully brief his second claim. The Court granted that motion. (ECF No. 14.) The Warden claims that by the time Thomas filed his amended petition, AEDPA's one-year statute of limitations had run. (ECF No. 15, PageID.1171.) And, says the Warden, Thomas' second claim does not relate back to his first.

The Court need not engage. It is not required to address statute of limitations before merits. *See Ahart v. Bradshaw*, 122 F. App'x 188, 192 (6th Cir. 2005). In this case, the Court prefers the merits over procedure and, as will become apparent, that choice results in no prejudice to the Warden.

To understand Thomas' second claim for habeas corpus relief, some additional factual and state-law background is necessary. As noted, Thomas presented an alibi to the jury. Thomas' then-girlfriend, Melissa Morrisey testified that around the time of the attack (around 9:00 p.m.), she and Thomas went to drop off her daughter at a babysitter's house. (ECF No. 12, PageID.684.) But Jeff Pergl's testimony was to the contrary. Pergl testified that he, his fiancé, and two others went with Morrisey to drop off her daughter at the babysitter's. (ECF No. 12, PageID.700.) And Pergl testified that Thomas was not with them. (*Id.*) While conflicting testimony is nothing uncommon, Michigan has a special rule about alibi witnesses and rebuttal alibi witnesses. In particular, Thomas was required to notify the prosecution of the "names" of his alibi witnesses and to inform the prosecution where he claims to have been at the time of the offense; the prosecution was then required to disclose the "names" of its rebuttal alibi witnesses. *See* Mich. Comp. Laws § 768.20.

Thomas did his part. But the prosecution did not provide Thomas with a list of rebuttal alibi witnesses before trial. Instead, the prosecution included Pergl on its general witness list and called Pergl in its case-in-chief.

With that background, Thomas' second ground for habeas corpus relief is more readily understood. He asserts that the prosecution's failure to identify rebuttal witnesses ahead of trial, coupled with the trial court's ruling that Pergl could nonetheless testify, violated his rights under the Due Process Clause as set out in *Wardius v. Oregon*, 412 U.S. 470 (1973). There, Wardius was prohibited from introducing alibi testimony because he had not complied with an Oregon law requiring him to give notice of his alibi witnesses to the prosecution. *Id.* at 471. But the Oregon law was not a "two-way street": it did not require the prosecution to disclose its rebuttal alibi witnesses to Wardius. *Id.* at 475. This lack of reciprocity was inconsistent with the Constitution: "the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants." *Id.* at 472. Thomas argues that there was a lack or reciprocity in his case (he gave notice, the prosecution did not) and so permitting Pergl's testimony deprived him of rights under the Due Process Clause. (ECF No. 9, PageID.95.) Thomas further explains that had the prosecution complied with the notice requirement, he may not have put on an alibi defense at all. (ECF No. 9, PageID.95–96.)

To decide whether Thomas' due process claim warrants habeas corpus relief, the Court must first decide whether that claim was adjudicated "on the merits" by the Michigan Court of Appeals. If so, then Thomas must show that the state appellate court unreasonably applied *Wardius* or based its decision on unreasonable fact-finding. 28 U.S.C. § 2254. But if not, then this Court addresses the due process inquiry *de novo*.

A case could be made for *de novo* review or, perhaps, that Thomas failed to exhaust his claim pursuant to *Wardius*. In his brief to the Michigan Court of Appeals, Thomas did not expressly rely on *Wardius*. Instead, he asserted that the trial court had abused its discretion in allowing the prosecution to present Pergl despite the prosecution's failure to comply with Michigan's notice-of-alibi statute. (ECF No. 12, PageID.943.) To establish this last point (that the prosecution did not comply with the statute), Thomas argued that even if Pergl was formally a case-in-chief witness, the content of his testimony made him a rebuttal alibi witness in fact. (*See* ECF No. 12, PageID.946.) Thomas' arguments prompted the Michigan Court of Appeals to treat Thomas' claim as presenting an issue of statutory interpretation. In particular, the Michigan Court of Appeals explained:

> The notice provision plainly refers to witnesses that the prosecutor intends to call for the specific purpose of rebutting the defendant's alibi; it does not refer to the witnesses that the prosecutor intended to call in his or her case in chief to establish the elements of the crime, even though those witnesses' testimony will necessarily contradict the defendant's alibi. Indeed, Thomas' interpretation of the statute would lead to an absurd result. If the prosecutor were prohibited from calling any witnesses that would contradict Thomas' alibi, then the prosecutor would have been prohibited from calling the victim because she testified that Thomas was in her home sexually assaulting her at a time when he claimed he was elsewhere. We will not give the statute such an absurd construction.

*Thomas*, 2015 WL 6955182, at *5. And nowhere in the Michigan Court of Appeals' opinion does *Wardius* make an appearance. And the Michigan Court of Appeals never mentions the Due Process Clause.

Even so, the Court believes that the state appellate court did adjudicate "on the merits" Thomas' claim that his rights under the Due Process Clause were violated when the prosecutor did not provide notice of rebuttal alibi witnesses before trial and then presented Pergl's testimony about Thomas' whereabouts. There are several reasons for this finding.

First, both Thomas (in his brief in the Michigan Court of Appeals) and the Michigan Court of Appeals cited *People v. Travis*, 505 N.W.2d 563 (Mich. 1993). And that case explained that Michigan's notice-of-alibi statute had been amended to impose disclosure requirements on the prosecution "[i]n response to *Wardius*." *Id.* at 567. In fact, *Travis* quoted *Wardius*' holding: "the United States Supreme Court ruled that 'the Due Process Clause of the Fourteenth Amendment forbids the enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants.'" *Travis*, 505 N.W.2d at 567 (quoting *Wardius*, 412 U.S. at 472). It would be reasonable to infer that the Michigan Court of Appeals reads cases its cites, read *Travis*, and thus was aware that Thomas' claim about Pergl's testimony implicated the Due Process Clause. *Cf. Johnson v. Williams*, 568 U.S. 289, 305 (2013) ("[I]t is difficult to imagine any panel of appellate judges reading [the California Supreme Court's opinion] and passing on the propriety of dismissing a holdout juror under [a state statute] without realizing that such situations also bear on the federal constitutional right to a fair trial."). Moreover, the Michigan Court of Appeals ultimately applied the abuse-of-discretion factors from *Travis*. *See Thomas*, 2015 WL 6955182, at *5. And the *Travis* court adopted those factors after expressly noting *Wardius*' reciprocity demand. *Cf. Johnson*, 568 U.S. at 304–05 ("[The California Supreme Court in] *Cleveland* did not expressly purport to decide a federal constitutional question, but its discussion of [federal case law] shows that the California Supreme Court understood itself to be deciding a question with federal constitutional dimensions."). Arguably then, by finding no abuse of discretion by the trial court under the *Travis* factors, the Michigan Court of Appeals found that the trial court did not breach *Wardius*' reciprocity requirement.

The Michigan Court of Appeals' factual determinations also support that read of its opinion. In particular, the Michigan Court of Appeals stressed that there was no unfair surprise:

We further note that the intent behind the rebuttal notice requirement in MCL 768.20 is to prevent surprise at trial. . . . In this case, the prosecutor's first and second amended witness lists—which were both filed before Thomas filed his notice of alibi—both indicated that Pergl would be called as a witness in the prosecutor's case-in-chief. Further, Thomas' trial lawyer represented to the court that, on the basis of the witness' statements, there was going to be testimony from a prosecution witness that the witness was with Thomas' alibi witness. Thus, Thomas' trial lawyer was plainly aware that the witness might testify in a way that controverted Thomas' alibi witness. This is not a case where the trial process was relegated to a "poker game in which players enjoy an absolute right always to conceal their cards until played." *People v. Travis*, 443 Mich. 668, 679; 505 NW2d 563 (1993) (quotation marks and citation omitted). Thomas' trial lawyer had actual notice that the witness at issue might undermine Thomas' alibi defense.

*Thomas*, 2015 WL 6955182, at *5. The Michigan Court of Appeals then went on to apply the

*Travis* factors:

[I]n determining whether a trial court abused its discretion in allowing the testimony of a rebuttal witness when notice under MCL 768.20 was untimely, we consider: "(1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors arising out of the circumstances of the case." [*Travis* 443 Mich.] at 682 (quotation marks and citation omitted).

Thomas was aware of the names of the witnesses, the prosecutor's intent to present them in her case-in-chief, and the substance of their testimony. The record also shows that the prosecutor did not give the notice because she did not intend to specifically rebut Thomas' alibi defense, but only intended to present her case-in-chief using the previously disclosed witnesses. Because Thomas knew who the prosecutor intended to call and had access to the clearly contradictory statements already provided by those witnesses, there was little—if any—harm occasioned by the failure to provide additional notice. In other words, knowing that the prosecutor intended to call Pergl and knowing what Pergl was likely to say should have been sufficient for Thomas' trial lawyer to evaluate whether he wanted to proceed with an alibi defense in light of the evidence.

*Thomas*, 2015 WL 6955182, at *5 (paragraphing altered). Effectively, the Michigan Court of

Appeals reasoned that even if the prosecution did not comply with the letter of the notice-of-alibi

statute, the purpose of the statute—to eliminate unfair surprise to Thomas—was fulfilled on the

facts of Thomas' case. And that is at least arguably an adjudication of the "merits" of Thomas'

claim of reciprocity under *Wardius*. *See Johnson*, 568 U.S. at 301 ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits.").

That threshold determination means that for this Court to grant Thomas habeas corpus relief on his due process claim, Thomas must show that the state court of appeals unreasonably applied *Wardius* or rejected his claim based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

Start with the state court's factual determinations. Thomas has not provided this Court with a copy of Pergl's statement to the police and the Court did not see it in the Rule 5 materials. Nor has Thomas shown that the prosecution produced so many witness statements that Pergl's statement was lost in a sea of them. As such, Thomas has not shown that the Michigan Court of Appeals unreasonably found that "Thomas knew who the prosecutor intended to call and had access to the clearly contradictory statements already provided by those witnesses." *Thomas*, 2015 WL 6955182, at *5; *see also id.* ("In other words, knowing that the prosecutor intended to call Pergl and knowing what Pergl was likely to say should have been sufficient for Thomas' trial lawyer to evaluate whether he wanted to proceed with an alibi defense in light of the evidence.").

Nor has Thomas shown that the Michigan Court of Appeals unreasonably applied *Wardius*. To start, the facts there were quite different than here: the criminal defendant in *Wardius* was precluded from introducing alibi testimony because he did not comply with the state's notice-of-alibi law; here, the prosecution was allowed to introduce rebuttal alibi testimony despite arguably not complying with the state's notice-of-alibi law. More importantly, the Supreme Court in *Wardius* was concerned with unfair surprise: "The State may not insist that trials be run as a 'search for truth' so far as defense witnesses are concerned, while maintaining 'poker game' secrecy for

its own witnesses. It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." *Id.* at 475–76. So one reading of *Wardius* is that there is no due process violation when the prosecution fails to provide a reciprocal alibi notice but the criminal defendant is nonetheless aware of the rebuttal witnesses. And, as noted, that is what the Michigan Court of Appeals thought happened in Thomas' case. So this Court cannot say that the state appellate court unreasonably applied *Wardius*.

As Thomas claim based on Pergl's testimony does not clear § 2254(d), this Court cannot grant habeas corpus relief based on that claim.

## IV.

For the reasons given, the Court DENIES Thomas' petition for a writ of habeas corpus. And because the Court believes no reasonable jurist could disagree with the Court's resolution of Thomas' claims, a certificate of appealability will not issue. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). If Petitioner nonetheless chooses to appeal, he may proceed in forma pauperis. *See* 28 U.S.C. § 1915(a)(3).

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Date: April 19, 2019

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record and/or pro se parties on this date, April 19, 2019, using the Electronic Court Filing system and/or first-class U.S. mail.

s/William Barkholz
Case Manager